## GITTLEMAN'S APPEAL.

Where a man gives his estate to his wife for life with powers to impair the principal and provides that one-half of the residue "shall be at her disposal by her own will at her own discretion," he gives but a life estate with a power to dispose of the same by will.

Appeal from the Orphans' Court of Berks County. No. 15 January Term, 1880.

The essential parts of the will of Abraham Ruth are as follows:

*Second.* I give, devise and bequeath unto my beloved wife, Elizabeth Ruth, all my property, real, personal and mixed of what nature and kind whatsoever the same may be at the time of my death, during her natural life, but in case my beloved wife, Elizabeth, should at any time after my decease see proper to sell any part of my estate, real, personal and mixed, it is my will that she may do so and give right and title as fully and effectually as I myself could do in my lifetime.

*Third.* It is my will and order that in case my said wife should not want the house and lot of ground whereon I at present live, situate in Spring Township, for her support during her life-time, then after my said wife's decease the said house and lot of ground shall be the property of Catherine Hauser, her heirs and assigns forever, together with the sum of five hundred dollars, if so there be so much remaining of my estate after my wife's decease, and in case the said Catherine Hauser should not survive my wife, and leave no chil-then, in that case, the bequest herein to her made shall fall back to my estate.

*Fourth.* It is my will, and I do order, that after my wife's decease, that in case there is more of my estate remaining than

what is herein bequeathed to Catherine Hauser, shall be divided into two equal parts—the one share thereof I give and bequeath to my brothers, George, Daniel, Benjamin, Henry, Samuel, John, and sisters Catherine Miller, Mary Reitzel and Elizabeth Miller, or their legal heirs, share and share alike, and the other share thereof shall be at the disposal of my wife by her own will at her own discretion.

---

An auditor appointed to make distribution of the fund in the hands of Absalom Ruth, administrator d. b. n. of Abraham Ruth, deceased, reported as follows:

The amount for distribution by the auditor is $1,970.34. It is agreed by the parties claiming the fund, that this entire sum shall be treated as personal property.

Abraham Ruth made his will, a copy of which is hereto attached, and which was admitted to probate.

He left all his estate to his wife Elizabeth during her life, with power to sell the realty and the right to use whatever was necessary for her support. At her death his dwelling house, if it still remained unsold, and the sum of $500, if that amount should remain, he left to Catherine Hauser. Whatever balance then remained he directs to be divided into two equal parts, one of which he gives to his brothers and sisters, and the other share he says "shall be at the disposal of his wife by her own will at her own discretion." After his death his wife entered upon the possession of the estate. She died eight or nine years later, whereupon Catherine Hauser came into possession of her portion, and it is the balance that is now to be distributed. Messrs. Green and Levan claim the whole of this fund for the brothers and sisters of Abraham Ruth, one-half of it because willed to them, the other half because Mrs. Ruth had but a power of disposition over it, and she having died intestate, it passes to them as heirs at law of the testator. Messrs. Kaufman and Schell claim the latter one-half on the ground that under the will Mrs. Ruth took this absolutely, and as her representatives and heirs, it comes to them.

Both sides agree that, as to the estate as a whole, Mrs. Ruth took but a life estate. At least it is not otherwise claimed

here. 'It might have been plausibly urged that the gift to her was so full and generous, and her power over the estate so absolute as to vest in her a fee, even though the testator said it was but a life estate, he meant to give. And the auditor feels almost persuaded that this is the strongest ground upon which to base the claim for the wife's representatives in this case. No such claim, however, is made. If made, it would include a demand for the whole fund, and would seek to wrest from the hands of Mrs. Hauser her $500 and the house which she has in her unsuspicious possession. The law is well settled that what the testator meant to give is the measure of his gift. It is only necessary then to ascertain what he meant to give. He has told us clearly and in language not to be mistaken. He says he gives his estate to his wife "during her life." She may sell if she sees proper, and give good title. He says "in case my wife should not want the house for her support during her life-time," giving by implication power to use up everything *for her support* during her life-time. In short his whole estate is hers as long as she lives and can use it, and he allows her to use it all, and thinks it possible she may do so. But whatever is left at her death becomes his own ; he calls it *his* estate and gives it away and disposes of it as though his title to it were unquestioned. This your auditor feels assured proves clearly that under the second clause of the will, Mrs. Ruth took a life estate in the testator's property, and no more.

The claim is made that the testator said "the other share thereof shall be at the disposal of my wife by her own will," he did not mean by her last will and testament. This certainly cannot be true. If the testator did not mean to give his wife a power of appointment, he was very unfortunate in his use of words. He might have said "shall be at her disposal," or he might have used a score of phrases which layman and lawyer would understand to convey the idea that his wife was to do as she pleased with his money. But he says, "shall be at the disposal of my wife by her own will." He does not even say *at* her own will, but uses the very words of all others to express precisely the intention to have her dispose at her discretion *by will*. She may use her discretion in determining

whether or not to make a disposition, or to make choice of her legatees, but he fixes the method of disposition. Indeed, the text of this clause shows that the testator could have contemplated nothing else. "It is my will, and I order that after my wife's decease, that in case there is more of my estate remaining.... ...it shall be divided into two equal shares........ the other share thereof shall be at the disposal of my wife, &c." Now what disposition could she make that would coincide with these instructions? He fixes a time—after his wife is dead—after Mrs. Hauser has taken a portion of the realty—has received her $500—then the remnants of his estate being thrown together a division is to be made into two shares, one he gives away himself, the other he does not give, but "shall be at the disposal of my wife." But being now dead she could only dispose by a testament, and therefore he appropriately adds "by her own will." She could make no other disposition to meet the requirements of her testator. If she had attempted to dispose of this one share in any other way but by will, how could she have ascertained it? What means had she of ascertaining what sum would remain at her decease? This would, under the will, depend upon the length of her life, and the care and attention bestowed upon her during her days of helplessness and final sickness. He could then only have contemplated a power of appointment when he left this one share at his wife's disposal.

But again it is urged that if he even meant this, Mrs. Ruth by the former clauses of the will was given such a power over the whole, and therefore over this included "one share," that when the power of disposal by will was added, over this "one share" she certainly had every power necessary to constitute her the absolute owner. She had the power to sell which includes the power to mortgage—she certainly had the power to use, and when she obtains by virtue of the last clause the power to will, her control becomes supreme and her heirs and representatives are entitled to it.

In answer to this your auditor conceives that it is sufficient to say: Mrs. Ruth was executrix of her husband's will; she was a trustee as well as tenant for life, and as such she was responsible in her conscience, if not to your Honorable Court,

3 Wa 18

for the faithful execution of the powers confided to her. Her power of sale was a power merely of conversion. She could give good title, but her testator expected an equivalent for any lands disposed of. So it is true that she had a right to use the principal as well as income and interest of the estate, but it was given only by implication and was only *for her support during her life.* She might, perhaps, give away goods and moneys; she might waste the estate with impunity perhaps, but to do so would break the trust confided in her by her husband. Now it is difficult to see how such powers as she was given over the whole estate for life can swell out into absolute ownership freed from all trusts, when supplemented by a power of appointment; especially when the power of appointment does not exist with the other powers, and can only be exercised upon a balance which is not ascertained nor ascertainable until all other power upon it is gone. The power to sell and use could be exercised upon the whole estate—this was the particular estate, the life estate. When that is gone, wholly expended, the power of appointment accrues, but it is to be exercised over another portion of the testator's estate—over a half of the remainder—a totally different thing from the particular estate.

Mrs. Ruth having had then as to this one share the bare power of appointment, and having died intestate, this one share remains the estate of the testator, Abraham Ruth, and must be distributed to his representatives. This very case illustrates very nicely the good common sense and logic of the rule of law which directs the estate to go to Mr. Ruth's representatives and not to his wife's. He has given her his whole estate for life. All of it is liable for her support; she may consume it all, or most of it, or may not touch the principal. The point to be noticed is that she is to use what she needs during her life, and what remains unused by her, be it little or be it much, *is his own estate.*. When her living has been carved out, he considers the remainder still in himself; he holds it with a firm grasp, and with the hand of a master disposes of it. "The dwelling house shall be the property of Catherine Hauser, her heirs and assigns, forever; together with the sum of $500, if there be so much remaining of *my* estate."

Still there may be, he thinks, a balance undisposed of. "It is my will, and I do order, (he speaks like one having authority,) that after my wife's decease, that in case there is more of *my* estate remaining than what is herein bequeathed to Catherine Hauser, it shall be divided into two equal shares, the one share thereof I *give* and bequeath to my brothers and sisters, or their legal heirs, and the other share *shall be at* the disposal of my wife by her own will at her own discretion." "I give and bequeath to my brothers and sisters"—the property is the testator's—he gives from himself this share and the title has passed from him to them. When he speaks of the other share he changes his words—he does not say "I give to be disposed of, &c.." but this other share of my estate "shall be at the disposal of my wife." Here he has not given the very thing, but has indicated his desire that his wife shall do something with it, but until she does that something, by the law of inertia itself the property remains where it is. She *did* fail to take the action necessary to remove the title, and it still remains in the testator himself or his representatives.

---

The Court confirmed the report in the following opinion, per SASSAMAN, J.:

This estate is not unknown to us. It might have been well to have a statement of facts in regard to the preservation of this estate in the name of the decedent by his executrix coupled with this auditor's report. For our use this is not necessary, however, as we know that the fact of the preservation of this estate is not mistaken by the auditor. The auditor was really not required to pass on facts. The facts were taken for granted, and it seems the auditor was only required to pass on questions of law, arising on the distribution. His opinion in this matter is drawn so clearly, as we think under the law as now interpreted by our higher Court, that it can be well understood. So far as interpreting this will is concerned, we think he has comprehended the intention of the testator, and also the true legal position of his widow and executrix in relation to the trust of executing the will as it was confided to her. For what reason she did not execute her final power of

appointment "by her own will" we do not know. Her own heirs may be disappointed, but we fail to comprehend in what way they would have a claim for distribution out of the estate, after she had failed to execute the power that she certainly had. We are entirely of the same opinion with the auditor. Holding such views, each one of the exceptions would have to fail.

The exceptions are dismissed and the auditor's report is confirmed absolutely.

---

John K. Gittleman, administrator of Elizabeth Ruth, deceased, then appealed to the Supreme Court, complaining that the auditor did not award the fund or half of it to him.

*Messrs. H. Y. Kaufman and Frank R. Schell,* for appellant, argued that a bequest of personal property for life, without any limitation over vests an absolute interest; Brownfield's Estate, 8 Watts, 465; Diehl's Appeal, 36 Pa., 120; Silknitter's Appeal, 45 Pa., 368. The expression, "In case there is more of my estate remaining," is inconsistent with the idea that the widow took only a life estate; Church vs. Disbrow, 52 Pa., 219; Karker's Appeal, 60 Pa., 141; Myer's Appeal, 48 Pa., 27; Jauretche vs. Proctor, 48 Pa., 466; Paisley's Appeal, 70 Pa., 153; Cox vs. Rogers, 77 Pa., 160. The amount to go over is uncertain; Pushman vs. Filliter, 3 Vesey, 7; Bull vs. Kingston, 1 Merivale, 314. The appellees' claim is too remote; Zeisweiss vs. James, 63 Pa., 468. The conclusion of the auditor makes the testator die intestate as to part of his estate; Mutter's Estate, 38 Pa., 314. The word "by" may be read "according to" in the clause "by her own will"; Haubert vs. Haworth, 78 Pa., 83.

*Messrs. A. G. Green and E. M. Levan, contra,* cited: Reck's Appeal, 78 Pa., 432; Newbold vs. Boone, 52 Pa., 167; Mussel-man's Estate, 39 Pa., 469; Flintham's Appeal, 11 S. & R., 16; Mutter's Estate, 38 Pa., 321.

The Supreme Court affirmed the decree of the Orphans' Court on March 14, 1881, in the following opinion,

PER CURIAM:

We agree entirely with the opinion of the learned auditor in the Court below on the proper construction of the will of

Abraham Ruth, and affirm this decree for the reasons he has given.

Decree affirmed and appeal dismissed at the costs of appellant.